**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

STATE OF NEVADA ex rel. ROBERT EDWARD HAGER and ANDREW J. LUDEL, *qui tam* plaintiffs, on behalf of real parties in interest, WASHOE COUNTY, CLARK COUNTY, HUMBOLDT COUNTY, STOREY COUNTY, PERSHING COUNTY, CHURCHILL COUNTY, CITY AND COUNTY OF CARSON CITY, ESMERALDA COUNTY, WHITE PINE COUNTY, LYON COUNTY, ELKO COUNTY, NYE COUNTY, MINERAL COUNTY, LANDER COUNTY, EUREKA COUNTY, LINCOLN COUNTY, DOUGLAS COUNTY and STATE OF NEVADA,

    Plaintiffs,

v.

COUNTRYWIDE HOME LOANS SERVICING, LP, et al.,

    Defendants.

3:10-cv-419-RCJ-PAL

**ORDER**

This case involves a *qui tam* action filed by Robert E. Hager and Andrew Ludel ("Plaintiffs") on behalf of the State of Nevada and all seventeen counties in the State. The Nevada Attorney General has declined to intervene in this case. Plaintiffs filed a complaint against more than 40 defendants, most of whom are financial institutions. Currently before the Court are 15 motions to dismiss and their respective joinders. The Court scheduled oral argument for August 29, 2011. Without the approval of the Court, Plaintiffs' attorneys called the Defendants and told the Defendants that the hearing had been continued. The Court finds that the parties have waived oral argument and now submit their motions on the briefs.

**BACKGROUND**

On July 9, 2010, Defendants Federal National Mortgage Association ("Fannie Mae") and Intervenor Federal Housing Finance Agency ("FHFA") filed a petition for removal to this Court and attached Plaintiffs' Third Amended Complaint ("TAC"), the operative complaint. (Pet. for Removal (#1) at 1; TAC (#1-1) at 79-89). The TAC, originally filed in the Third Judicial District Court in and for the County of Churchill, stated the following. (TAC (#1-1) at 79). Plaintiffs sought recovery pursuant to Nevada's False Claims Act, NRS Chapter 357. (*Id.* at 81). Hager, a law student, and Ludel, a person "who has worked in the mortgage business" through research "jointly discovered" that Defendants "were and are making, using and causing to be made and used false statements to defraud the State and its Counties of required transfer taxes." (*Id.*). Defendants were obligated to pay transfer taxes and they were jointly and severally liable in their capacities as buyer and seller, pursuant to NRS § 375.030(2). (*Id.* at 83). There was no exemption that insulated Defendants from paying transfer taxes. (*Id.*). "Each of the defendants repeatedly filed fraudulent forms indicating no transfer tax was owing, or alternatively, filed forms which resulted in the underpayment of the transfer tax." (*Id.*). By failing to pay the transfer taxes, Defendants defrauded the State of Nevada and its counties. (*Id.*). Plaintiffs brought the action pursuant to NRS § 357.080 for violations of NRS § 357.040(1)(g)&(h). (*Id.*). Defendants "collectively and individually, knowingly, intentionally, or with reckless disregard . . . with *scienter* required by Chapter 357 made . . . false records and statements to conceal, and avoid and/or decrease their obligations to pay transfer taxes." (*Id.* at 83-84). The false statements were made in the "State of Nevada Declaration of Value" form "in the record of the various County Recorders that Freddie Mac and/or defendant Fannie Mae were and are a tax-exempt 'Government Entity' or 'Government Agency.'" (*Id.* at 84).[1]

The complaint alleges that "Defendants have engaged in thousands of sales and transfers of title of real property in the State" and were obligated to pay transfer taxes as

---

[1] Plaintiffs named Fannie Mae as a defendant but did not name Freddie Mac as a defendant. (*See* Complaint (#1-1) at 79-80).

1  transferor/seller and or transferee/buyer but completely or partially avoided payment of those
2  taxes. (*Id.*). Several specified Defendants identified themselves as the foreclosing beneficiary
3  on the trustee's deeds upon sale as the seller (grantor) on the State of Nevada Declaration
4  of Value form.  (*Id.* at 84-85). Those Defendants were neither the beneficiary nor the
5  seller/grantor but instead acted as agents for the remaining specified Defendants and made
6  false statements to avoid or decrease transfer taxes. (*Id.* at 85). Defendant Fannie Mae made
7  false statements in the Declaration of Value forms by intentionally misrepresenting to the State
8  that it was a government agency exempt from conveyance or transfer taxes.  (*Id.* at 86).
9  Plaintiffs alleged that "[d]uring the five years immediately preceding the filing of the original
10 complaint, and since that time, each of the defendants did not pay the required transfer or
11 conveyance taxes . . . used false representations in order to avoid paying in full those required
12 taxes." (*Id.*). Plaintiffs sought various monetary damages and liquidated penalties. (*Id.* at 87-
13 89).  Plaintiffs alleged that on July 1, 2006, Washoe County's transfer tax rate increased to
14 $1.25 on each $500 value and that Defendants made false statements regarding the amount
15 of transfer tax due in Washoe County.  (*Id.* at 88).

16       The fifteen motions to dismiss now follow.

17                            **LEGAL STANDARD**

18       When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the
19 court must accept as true all factual allegations in the complaint as well as all reasonable
20 inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150
21 n.2 (9th Cir. 2000).  Such allegations must be construed in the light most favorable to the
22 nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the
23 court should only look to the contents of the complaint during its review of a Rule 12(b)(6)
24 motion to dismiss.  However, the court may consider documents attached to the complaint or
25 referred to in the complaint whose authenticity no party questions.  *Id.*; *see Durning v. First*
26 *Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

27       The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a
28 claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th

Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**DISCUSSION**

In the TAC, Plaintiffs allege that Defendants violated Nevada's False Claims Act because Defendants stated on the Declaration of Value forms that Fannie Mae was a

4

government agency exempt from taxation and, when in Washoe County, Defendants made a false statement on the amount of transfer tax due. (*See* Compl. (#1-1) at 88). In response to these allegations, Defendants have filed multiple motions to dismiss and joinders to these motions to dismiss. (*See generally Docket Sheet* (#222-276)).

I.  **Federal Instrumentality**

As an initial matter, the Court finds that Fannie Mae is not a federal instrumentality for taxation purposes. Fannie Mae relies on the Ninth Circuit case *Rust v. Johnson*, 597 F.2d 174 (9th Cir. 1979) for the proposition that it is a federal instrumentality for tax purposes. However, the Court finds that *Rust* is distinguishable and recognizes that an entity designated as a federal instrumentality for one purpose does not mean that the entity is a federal instrumentality for other purposes. *See Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1185 (9th Cir. 2004) (holding that "the status of federal instrumentality for one purpose does not mean that the same entity is a federal instrumentality for tort purposes").

In *Rust*, the case arose out of the foreclosure of a street improvement bond on a parcel of property located in Los Angeles, California. *Rust*, 597 F.2d at 176. The foreclosure resulted in a dispute over the power of the City of Los Angeles to foreclose on property in which the United States held an interest. *Id.* The City had assessed the property at issue for street improvements and issued a bond to pay the assessment. *Id.* At the time of the assessment, Fannie Mae was in the process of foreclosing on the purchase money mortgage interest which it held in the property under a deed of trust. *Id.* The deed of trust was insured by the Federal Housing Administration and had been previously assigned to Fannie Mae and Imperial Bank. *Id.* After completing the foreclosure, Fannie Mae conveyed the property to the Secretary of Housing and Urban Development ("HUD"). *Id.* HUD did not make any payments on the bond. *Id.* The City then commenced foreclosure. *Id.* HUD then conveyed the property to the appellees. *Id.* The City later completed foreclosure and sold the property to the appellant. *Id.* In the subsequent lawsuit, the district court found that the action of the City to collect payment on the bond was an unconstitutional exercise of state power over property of the United States and entered judgment quieting title in favor of the appellees. *Id.*

The City and the appellant appealed. *Id.*

In holding that Fannie Mae was a federal instrumentality, the Ninth Circuit specifically held that there was "[n]o basis in law . . . for treating mortgage interests of federal instrumentalities differently from other property of the United States." *Id.* at 177. The Ninth Circuit recognized that, in 1968, Congress transferred Fannie Mae to the private sector but held that it could not "find anything in the legislative history or in the statutes governing the operation of [Fannie Mae] which support[ed] the conclusion that Congress intended to strip [Fannie Mae] of its status as a federal instrumentality." *Id.* at 178. The Ninth Circuit held that "an exercise of state power over a mortgage interest held by [Fannie Mae] constitutes an exercise of state power over property of the United States." *Id.*

This Court finds that *Rust* is distinguishable from the question at hand because *Rust* did not address whether Fannie Mae was a federal instrumentality for tax purposes. The U.S. Supreme Court has recognized that instrumentalities, "means and operations whereby the United States exercises it governmental powers," are exempt from taxation by the States. *Indian Motocycle Co. v. United States*, 283 U.S. 570, 575, 51 S.Ct. 601, 602, 75 L.Ed. 1277 (1931). The Supreme Court has stated that there is "no simple test for ascertaining whether an institution is so closely related to governmental activity as to become a tax-immune instrumentality." *Dep't of Employment v. United States*, 385 U.S. 355, 358-59, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966). However, in holding that the Red Cross was a federal instrumentality, the Supreme Court held that "both the President and the Congress have recognized and acted in reliance upon the Red Cross' status virtually as an arm of the Government." *Id.* at 359-60, 87 S.Ct. at 467. The Ninth Circuit has held that the test for determining whether an entity is a federal instrumentality for purposes of protection from state or local taxation is "whether the entity performs an important governmental function." *Lewis v. United States*, 680 F.2d 1239, 1242 (9th Cir. 1982).

Fannie Mae is one of two federally-chartered government-sponsored enterprises that serve the public policy of expanding home ownership to moderate and low-income families, in part, by supplying capital and liquidity for residential mortgages. *In re Fed. Nat'l Mortg.*

6

*Ass'n Sec., Derivative, and ERISA Litig.*, 247 F.R.D. 32, 34 (D.D.C. 2008).  It is a private shareholder-owned company, and its common stock is publicly traded on the New York Stock Exchange ("NYSE").  *Id.*

Fannie Mae is a private, for-profit entity, that is owned by its private shareholders.  *See* 12 U.S.C. § 1716b; *see also Fed. Nat'l Mortg. Ass'n v. United States*, 379 F.3d 1303, 1305 (Fed. Cir. 2004) (holding that "[f]ormerly a federal government agency, [Fannie Mae] is a private, for-profit entity that provides liquidity for mortgage investments"); *see also Patriot, Inc. v. U.S. Dep't of Housing & Urban Dev.*, 963 F.Supp. 1, 7 (D.D.C. 1997) (finding that Fannie Mae is not a government agency and does not issue regulations as a private entity).  Although regulated by the federal government in some aspects of its business, Fannie Mae is essentially a privately-owned mortgage banker providing secondary mortgage loans.  *See* 12 U.S.C. § 1718; *see* 12 U.S.C. § 1723a(j)-(o) (identifying Fannie Mae's reporting obligations to the Comptroller General, Government Accountability Office, Federal Housing Finance Agency, Congress); *see* 12 U.S.C. § 1719(b)-(e) (providing the Secretary of the Treasury with some control over Fannie Mae's ability to issue debt securities and borrowing from the Treasury).  The Court finds that Fannie Mae is not a federal instrumentality simply because Congress has imposed reporting obligations and operational restrictions upon it.  *See Kuntz*, 385 F.3d at 1184 (holding that neither federal regulation nor federal funding, even extensive or exclusive federal funding, is sufficient to make an entity a federal agency or instrumentality).  After examining the statutes, the Court finds that the federal government exerts minimal control over the privately-owned corporation.

Nonetheless, this Court recognizes that Fannie Mae serves the national goal of providing low income housing.  However, this Court also recognizes that Fannie Mae and the federal government have not become so interdependent with each other as to make Fannie Mae's actions the actions of the federal government.  Fannie Mae does not act as a virtual arm of the federal government because it operates as a for-profit entity owned by its private shareholders.  Therefore, the Court concludes that Fannie Mae is not a federal instrumentality for tax purposes.

Nevertheless, the Court finds that the Federal Housing Finance Agency ("FHFA") is an independent agency of the federal government who has authority over Fannie Mae. 12 U.S.C. § 4511(a)-(b). On September 6, 2008, the Director of the FHFA placed Fannie Mae into the FHFA's conservatorship "for the purpose of reorganizing, rehabilitating, or winding up [its] affairs." 12 U.S.C. § 4617(a)(2). As conservator, FHFA is charged with taking any action "necessary to put the regulated entity in a sound and solvent condition" and any action "appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity." *Id.* § 4617(b)(2)(D). The Housing and Economic Recovery Act of 2008 ("HERA") provides the FHFA, as a conservator, with broad powers. To illustrate, the FHFA "by operation of law, immediately succeed[ed] to . . . all rights, titles, powers, and privileges of [Fannie Mae], and of any stockholder, officer, or director of [Fannie Mae]" and all rights (i) to the assets of Fannie Mae; (ii) to collect all obligations and money due Fannie Mae; (iii) to perform all functions of Fannie Mae, in its name, consistent with appointment of the conservator; and (iv) to exercise such incidental powers as may be necessary to carry out all powers and authorities specifically granted. *Id.* § 4617(b)(2)(A), (B), (J).

Congress explicitly provided a taxation exemption to the FHFA when acting as a conservator. Specifically, when acting in capacity as conservator, the FHFA

> including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed . . .

*Id.* § 4617(j)(1)-(2). Congress also exempted the FHFA, when acting as a conservator, from any penalties and fines. Congress provided that the FHFA "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." *Id.* § 4617(j)(4). As such, the Court finds that while under conservatorship with the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the same extent that the FHFA is.

8

## II. Nevada's False Claims Act

Under Nevada's False Claims Act, a person who, with or without specific intent to defraud who, *inter alia*, "[k]nowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State or a political subdivision" is liable for damages. NRS § 357.040(1)(g). This claim is known as a reverse false claim. *Int'l Game Tech., Inc. v. Second Judicial Dist. Ct.*, 127 P.3d 1088, 1102 (Nev. 2006) ("*IGT*"). A reverse false claim only applies to situations when a person "knowingly" exploited a false record to conceal, avoid, or decrease an obligation to pay. *Id.* at 1105. A person "knowingly" acts with respect to information if he or she either has knowledge of the information, acts in deliberate ignorance of whether the information is true or false, or acts in reckless disregard of the truth or falsity of the information. NRS § 357.040(2)(a)-(c). The Nevada Supreme Court has held that the requisite scienter is defined as "the knowing presentation of what is known to be false," or a lie, and does not mean to take advantage of a disputed legal question. *IGT*, 127 P.3d at 1105.

A beneficiary of an inadvertent submission of a false claim is liable for damages if "after discovering the falsity of the claim, fails to disclose the falsity to the State or political subdivision within a reasonable time." NRS § 357.040(1)(h).

### A. Federal Rule of Civil Procedure 9(b)

A plaintiff who claims that a defendant violates Nevada's False Claims Act must plead the claim with the particularity required under Rule 9(b). *See Nevada ex rel. Steinke v. Merck & Co., Inc.*, 432 F.Supp.2d 1082, 1089 (D. Nev. 2006). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* A "plaintiff must set forth *more* than

the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*

Here, Plaintiffs' TAC lacks any of the specificity required by Rule 9(b). Instead, the TAC lumps all Defendants together and then generally states that Defendants committed fraud in the five years proceeding. The TAC does not speak with any specificity as to any of the alleged false statements and instead simply provides that at some point in time all of these Defendants filled out forms, made false statements, and avoided paying taxes. The TAC does not identify which particular Defendant did what, when, where, or how. As such, Defendants can only deny that they did anything wrong over a five-year time span. Therefore, the Court grants the motions to dismiss the TAC in its entirety for failure to plead the FCA claims with Rule 9(b) particularity. Additionally, for the reasons discussed below, the Court dismisses the TAC without leave to amend.

**B.     FCA Jurisdiction**

Nevada's FCA deprives a court of jurisdiction over any *qui tam* action that is based upon allegations or transactions already disclosed in certain public fora, unless the relator is the original source of the information underlying the action. Specifically, the Nevada Revised Statutes provide that:

> No action may be maintained pursuant to this chapter that is based upon the public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in an investigation, report, hearing or audit conducted by or at the request of a house of the Legislature, an auditor or the governing body of a political subdivision, or from the news media, unless the action is brought by the Attorney General or an original source of the information.

NRS § 357.100(1). A person is an original source if: (a) he has direct and independent knowledge of the information on which the allegations were based; (b) he voluntarily provided the information to the State or political subdivision before bringing an action based on the information; and (c) the information provided the basis or caused the making of the investigation, hearing, audit or report that led to the public disclosure. NRS § 357.100(2)(a)-(c).

In this case, Plaintiffs base their FCA claims on the State of Nevada Declaration of

10

Value forms that Defendants filed with county recorders pursuant to NRS § 375.060. (*See* TAC (#1-1) at 84). Nevada Revised Statute § 375.060 provides that each deed evidencing a transfer of title of real property that is presented to the county recorder for recordation must include the Nevada Tax Commission's declaration of value form. Because the Nevada Legislature mandates that Defendants publicly record these transactions, Plaintiffs may only maintain this lawsuit if they are the original sources of information. Here, neither Plaintiff has direct and independent knowledge of the information on which their allegations are based despite conclusively stating that they do. (*See* TAC (#1-1) at 81(¶ 2)). The allegations demonstrate that Plaintiffs learned of the information by "researching" the State of Nevada Declaration of Value forms and seeing that Defendants had claimed that Fannie Mae and Freddie Mac were entitled to transfer tax exemptions. (*See id.* at 81 (¶1), 84-85 (¶7)). Thus, Plaintiffs did not have direct and independent information of the contents of the forms because none of the Plaintiffs filled out any of the Declaration of Value forms. As such, Plaintiffs are not original sources of information and the Court dismisses this case for lack of statutory jurisdiction. The Court finds that, pursuant to NRS § 357.100(1), the Attorney General is the only person permitted to bring a lawsuit under Nevada's FCA based on the allegations in the TAC.

The Court notes that the Attorney General has declined to intervene in this action. Under NRS § 357.130(2), the Attorney General may intervene if the State's interest in the recovery of the money is not being adequately represented by the *qui tam* plaintiffs. Because Plaintiffs lack statutory jurisdiction to bring this case, they cannot represent the interests of the State. The Court reiterates that if the Attorney General wishes to pursue an FCA claim against Defendants, the Attorney General may bring a case pursuant to NRS § 357.100(1). Accordingly, the Court dismisses this *qui tam* action with prejudice.

///
///
///
///

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Defendants' motions to dismiss (# 222, 225, 227, 229, 230, 231, 233, 240, 241, 246, 248, 249, 250, 251, 274) and their respective joinders are GRANTED in their entirety as to all claims without leave to amend.

The Clerk of the Court shall enter judgment accordingly.

DATED: This _16th_ day of September, 2011.

_____
United States District Judge